**Opinion issued September 7, 2023**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-22-00325-CR

———————————

**JUAN JOSE NAVARRO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 339th District Court**
**Harris County, Texas**
**Trial Court Case No. 1686011**

---

## MEMORANDUM OPINION

A jury found appellant, Juan Jose Navarro, guilty of the felony offense of violation of a protective order, with two or more prior convictions.[1] After finding true the allegation in enhancement that appellant had been previously convicted of

---

[1] *See* TEX. PENAL CODE ANN. § 25.07(a)(3), (g)(2)(A).

a felony offense, the trial court assessed his punishment at confinement for sixteen years. In his sole issue, appellant contends that the evidence is legally insufficient to support his conviction.

We affirm.

## Background

The complainant, Raul Navarro, testified that he lives at 1127 Louise Street, Houston, Harris County, Texas. Appellant is his son. The complainant has an active protective order against appellant, which prohibits appellant from coming to the complainant's house. Appellant knew that he was not allowed to come to the complainant's house.

On August 13, 2020, appellant came to the complainant's house in the middle of the night. Appellant "started banging at the window" and "yelling and screaming [that] he had lost his [cellular] [tele]phone." The complainant was asleep, and appellant woke him up. Appellant wanted the complainant to get him a cellular telephone, and the complainant told appellant to "wait [un]til . . . the morning" and he would "go to Wal-Mart or something." This made appellant mad. The complainant called for emergency assistance because he was scared of appellant. The complainant was worried that appellant might "break the window" or the air conditioning unit or that appellant would "come in" in the house and "maybe hurt [him]." The complainant's neighbor also called for emergency

2

assistance. After law enforcement officers arrived, the complainant unlocked the gate to his home for them. The officers found appellant under the complainant's house.

According to the complainant, appellant did not have permission to be at the complainant's house on the night of August 13, 2020, and the complainant did not tell appellant to come to his house. Appellant was not allowed at the complainant's house because doing so would "break the protective order." The complainant stated that appellant had "climbed over the gate" at the complainant's house that night.

The complainant noted that sometimes he met appellant at fast food restaurants and he would give appellant money so that appellant could buy something to eat. And sometimes appellant would call the complainant when he needed clothes to be washed. The complainant would "help [appellant] out with whatever [he] could" and he felt "bad that [appellant] was hungry." The complainant would meet appellant in public places because he knew that appellant could not come to the complainant's house "on account of the protective order."

The complainant further testified that he previously had a protective order against appellant, which was issued in June 2003 and lasted for two years. The protective order prohibited appellant from coming to the complainant's home. The

complainant stated that he and his wife got the protective order because if they did not, they would "be in danger." The complainant was afraid of appellant.

According to the complainant, appellant came to the complainant's home on July 4, 2003, and the complainant called for emergency assistance. Although appellant left the complainant's home, law enforcement officers eventually located him, and appellant was charged with the offense of violation of a protective order. Appellant was convicted of the offense and "spent some time in the jail." On August 6, 2003, appellant again came to the complainant's home. The complainant called for emergency assistance that day as well.

During the complainant's testimony, the trial court admitted into evidence a copy of a protective order dated June 18, 2003, which states that the complainant had applied for a protective order against appellant. In the protective order, the trial court finds that the complainant and appellant are members of the same family, family violence has occurred, and family violence will likely occur again in the future. The trial court also finds that appellant has committed family violence and that the protective order is necessary for the "safety and welfare and in the best interest" of the complainant and "necessary for the prevention of family violence." Thus, the trial court, among other things, orders that appellant is prohibited, under chapter 85 of the Texas Family Code, from "[g]oing to or near the residence or place of employment or business of [the complainant], specifically," appellant is

prohibited "from coming within 200 feet of [the complainant's] place of residence located in Harris County at 1127 Louise, Houston, Texas 77009, or any future residential or employment address of [the complainant]." (Emphasis omitted.) The protective order states that it "shall continue in effect for a period of two years." It is signed by the trial court and appellant.

Houston Police Department Sergeant D. Flores testified that on August 13, 2020, he was on patrol during the night shift when he responded to a call about a suspicious person. The call was received at 12:37 a.m., and Flores arrived at a house located at 1127 Louise Street in Harris County at 12:41 a.m. The complainant came out to the gate of the home and met Flores and the other law enforcement officers who had arrived at the scene. The complainant had to unlock the gate for the officers. He appeared concerned.

Law enforcement officers then searched the complainant's property to look for appellant. Eventually, law enforcement officers found appellant under the complainant's house. After appellant came out from under the house, the officers arrested him. Sergeant Flores noted that another law enforcement had "checked [appellant's] record" and found that appellant had an active protective order against him, which protected the home located at 1127 Louise Street. The complainant provided law enforcement officers with a copy of the protective order

that night.  As to appellant, Sergeant Flores testified that appellant "ha[d] an alias of Jose Juan Navarro."

During Sergeant Flores's testimony, the trial court admitted into evidence a copy of a protective order, dated May 29, 2019, which states that the complainant had applied for a protective order against appellant.  In the protective order, the trial court finds that the complainant and appellant are members of the same family, family violence has occurred, and family violence will likely occur again in the future.  The trial court also finds that appellant has committed family violence and appellant "has engaged in conduct toward [the complainant] that would be a felony if charged."  (Emphasis omitted.)  Further, the trial court finds that there have been two or more previous protective orders rendered to protect the complainant from appellant and those protective orders have expired.  Finally, the trial court finds that the protective order is for the safety and welfare and in the best interest of the complainant and is necessary for the prevention of family violence.  Thus, the trial court, among other things, orders that appellant is prohibited, under chapter 85 of the Texas Family Code, from "[g]oing to or near the residence or place of employment or business of [the complainant], specifically," appellant is prohibited "from coming within 200 feet of [the complainant's] place of residence located in Harris County at 1127 Louise, Houston, Texas 77009, or any future residential or employment address of [the

complainant]." (Emphasis omitted.) The protective order states that it "shall continue in effect for [appellant's] lifetime." It is signed by the trial court.

As to the May 29, 2019 protective order, Sergeant Flores testified that the complainant applied for the protective order against appellant, and it was issued on May 29, 2019. The protective order prohibited appellant from "coming within 200 feet of [the complainant's] place of residence located in Harris County, 1127 Louise Street, Houston[,] Texas 77009," and law enforcement officers found appellant at that address on August 13, 2020. (Internal quotations omitted.) The May 29, 2019 protective order was "a permanent lifetime protective order," with "no end date."

Blanca Avilez testified that she is a latent print examiner with the Harris County Sheriff's Office. As part of her job, Avilez reviews "known prints," also known as "inked print[s]," including those found on court judgments. According to Avilez, a court judgment "memorializes a conviction from the court," and it often contains a fingerprint. Avilez can determine whose fingerprint appears on a court judgment.

On the morning of trial, Avilez took appellant's fingerprints.[2] Avilez then compared appellant's inked fingerprints to the fingerprints on a 2003 jail card. According to Avilez, a "jail card" is created "[w]hen a person gets booked into the

---

[2] A copy of appellant's inked fingerprints taken by Avilez on the morning of trial was admitted into evidence by the trial court.

7

jail system." It contains "the person's descriptors, which are things such as name, date of birth, SPN number,[3] and sheriff's office number, along with whatever offense they're being arrested for, along with their fingerprints."

During Avilez's testimony, the trial court admitted into evidence a copy of the jail card, which is dated August 6, 2003. It lists appellant's name as "Jose Juan Navarro" and includes other identifying information, including a physical description of appellant, appellant's SPN number, and appellant's social security number. It also lists the complainant as appellant's father and lists appellant's trial court cause number as 1187299. Further, it states that on August 6, 2003, appellant was arrested for the offense of violation of a protective order. Appellant signed the 2003 jail card as "Juan Navarro." Avilez testified that the fingerprints on the jail card were appellant's fingerprints.

During Avilez's testimony, the trial court also admitted into evidence a copy of a judgment of conviction rendered in trial court cause number 1187299. The judgment lists appellant's name, and states that on August 7, 2003, appellant was convicted of the offense of violation of a protective order and the trial court

---

3    An SPN number is a unique number assigned to an individual housed in the jail. *See Degrassa v. State*, No. 01-12-00162-CR, 2014 WL 458983, at *1 (Tex. App.—Houston [1st Dist.] Feb. 4, 2014, no pet.) (mem. op., not designated for publication); *Bundick v. State*, 14-12-00568-CR, 2013 WL 1352339, at *4 (Tex. App.—Houston [14th Dist.] Apr. 4, 2013, no pet.) (mem. op., not designated for publication). No two people have the same SPN number. *See Degrassa*, 2014 WL 458983, at *1, *4.

assessed appellant's punishment at confinement for ninety days. The judgment

lists appellant's arrest date as August 6, 2003. Avilez testified that she was able to

identify the fingerprint on the August 7, 2003 judgment of conviction as belonging

to appellant.

Additionally, during Avilez's testimony, the trial court admitted into

evidence a copy of another judgment of conviction rendered in trial court cause

number 1181781. The judgment shows that, on July 11, 2003, "Jose Juan

Navarro" was convicted of the offense of violation of a protective order, and the

trial court assessed his punishment at confinement for eight days. The judgment

lists the date of the offense as July 4, 2003.[4] Avilez testified that the copy of the

2003 jail card, which contained appellant's fingerprints and which the trial court

admitted into evidence, also lists appellant's name as "Jose Juan Navarro."

Appellant signed the 2003 jail card with the name "Juan Navarro."

**Standard of Review**

We review the legal sufficiency of the evidence by considering all of the

evidence in the light most favorable to the jury's verdict to determine whether any

"rational trier of fact could have found the essential elements of the crime beyond a

reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979); *Williams v.*

---

[4]     Avilez stated that she was unable to identify the fingerprint on the July 11, 2003
        judgment of conviction as belonging to appellant because "[t]here was not
        sufficient ridge detail [in the print on the judgment] for [her] to [be able to]
        compare [it] . . . to the known fingerprint" for appellant.

9

*State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Our role is that of a due process safeguard, ensuring only the rationality of the trier of fact's finding of the elements of the offense beyond a reasonable doubt. *See Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). We defer to the responsibility of the fact finder to resolve conflicts fairly in testimony, weigh the evidence, and draw reasonable inferences from the facts. *Williams*, 235 S.W.3d at 750. That said, our duty requires us to "ensure that the evidence presented actually supports a conclusion that the defendant committed" the criminal offense of which he is accused. *Id.*

We note that in reviewing the sufficiency of the evidence, a court must consider both direct and circumstantial evidence and any reasonable inferences that may be drawn from the evidence. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *see also Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012) (evidence-sufficiency standard of review same for both direct and circumstantial evidence). Circumstantial evidence is just as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *See Clayton*, 235 S.W.3d at 778; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). For evidence to be sufficient, the State need not disprove all reasonable alternative hypotheses that are inconsistent with a defendant's guilt. *See Wise*, 364 S.W.3d at 903; *Cantu v. State*, 395 S.W.3d 202,

207–08 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd). Rather, a court considers only whether the inferences necessary to establish guilt are reasonable based on the cumulative force of all the evidence when considered in the light most favorable to the jury's verdict. *See Wise*, 364 S.W.3d at 903; *Hooper*, 214 S.W.3d at 13; *see also Murray v. State*, 457 S.W.3d 446, 448–49 (Tex. Crim. App. 2015) ("When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination."). The jury, as the judge of the facts and credibility of the witnesses, could choose to believe or not to believe the witnesses, or any portion of their testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); *Jenkins v. State*, 870 S.W.2d 626, 628 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd).

## Sufficiency of Evidence

In his sole issue, appellant argues that the evidence is legally insufficient to support his conviction for violation of a protective order, with two or more prior convictions, because the evidence did not link one of the alleged prior convictions for the offense of violation of a protective order to appellant. Specifically, appellant asserts that the State "failed to prove" appellant's alleged prior conviction on July 11, 2003 for the offense of violation of a protective order in trial court cause number 1181781.

A person commits the offense of violation of a protective order, if, in violation of an order issued under chapter 85 of the Texas Family Code,[5] the person knowingly and intentionally goes to or near the residence or place of employment or business of a protected individual. *See* TEX. PENAL CODE ANN. § 25.07(a)(3)(A). Typically, the offense of violation of a protective order is a Class A misdemeanor offense. *See id.* § 25.07(g); *see also Pullis v. State*, No. 10-13-00135-CR, 2014 WL 31423, at *1 (Tex. App.—Waco Jan. 2, 2014, pet. dism'd) (mem. op., not designated for publication) ("Violation of a protective order without the prior convictions is a class A misdemeanor."). But the offense of violation of a protective order constitutes a third-degree felony offense if it is shown at trial that the defendant was "previously convicted two or more times of an offense" under Texas Penal Code section 25.07. *See* TEX. PENAL CODE ANN. § 25.07(g)(2)(A); *see also Ramsay v. State*, No. 13-09-00330-CR, 2010 WL 2967066, at *1 (Tex. App.—Corpus Christi–Edinburg July 29, 2010, no pet.) (mem. op., not designated for publication) (noting enhancement for two or more prior convictions for violation of protective order).

---

[5] Under the Texas Family Code, "[a] court shall render a protective order as provided by [s]ection 85.001(b) if the court finds that family violence has occurred and is likely to occur in the future." *See* TEX. FAM. CODE ANN. §§ 81.001, 85.001(b), 85.022; *see also Rogers v. State*, No. 09-15-00270-CV, 2017 WL 2698038, at *2 (Tex. App.—Beaumont June 21, 2017, no pet.) (mem. op., not designated for publication).

To establish that the defendant has been convicted of a prior offense, the State must prove beyond a reasonable doubt that (1) a prior conviction exists and (2) the defendant is linked to that conviction. *Flowers v. State*, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007); *Kinnett v. State*, 623 S.W.3d 876, 896 (Tex. App.— Houston [1st Dist.] 2020, pet. ref'd). There is no specific document or mode of proof required to establish that a prior conviction exists, and that the defendant is linked to that conviction. *Flowers*, 220 S.W.3d at 921; *Kinnett*, 623 S.W.3d at 896. As the Court of Criminal Appeals has stated:

> There is no "best evidence" rule in Texas that requires that the fact of a prior conviction be proven with any document, much less any specific document. While evidence of a certified copy of a final judgment and sentence may be a preferred and convenient means, the State may prove both of these elements in a number of different ways, including (1) the defendant's admission or stipulation, (2) testimony by a person who was present when the person was convicted of the specified crime and can identify the defendant as that person, or (3) documentary proof (such as a judgment) that contains sufficient information to establish both the existence of a prior conviction and the defendant's identity as the person convicted.

*Flowers*, 220 S.W.3d at 921–22 (internal footnotes omitted). "Any type of evidence, documentary or testimonial," may suffice to prove a prior conviction. *Id.* at 922; *see also Kinnett*, 623 S.W.3d at 896. The fact finder looks at the totality of evidence admitted concerning the prior conviction to determine (1) whether there was a prior conviction and (2) whether the defendant was the person convicted. *Flowers*, 220 S.W.3d at 923; *see also Henry v. State*, 509 S.W.3d 915,

13

919 (Tex. Crim. App. 2016) (fact finder "must look at the totality of the evidence adduced" and "must consider the evidence as a whole, as each piece of evidence may provide little meaning if considered in isolation").

Here, the indictment alleged, as enhancements, that appellant had two prior convictions for the offense of violation of a protective order, namely: (1) a conviction on July 11, 2003, in trial court cause number 1181781, in County Criminal Court at Law No. 13 of Harris County and (2) a conviction on August 7, 2003, in trial court cause number 1187299, in County Criminal Court at Law No. 12 of Harris County. On appeal, appellant challenges the sufficiency of the evidence linking him to the first alleged prior conviction—the July 11, 2003 conviction for the offense of violation of a protective order.

As evidence relevant to the July 11, 2003 conviction, the complainant testified that he lived at 1127 Louise Street, Houston, Harris County, Texas. On July 4, 2003, the complainant had a protective order in place against appellant. That protective order was issued in June 2003, and it lasted for two years. The protective order prohibited appellant from coming to the complainant's home. The complainant stated that he and his wife got a protective order against appellant because if they did not, they would "be in danger." The complainant was afraid of appellant.

During the complainant's testimony, the trial court admitted into evidence a copy of a protective order, dated June 18, 2003, which states that the complainant had applied for a protective order against appellant. In the protective order, the trial court finds that the complainant and appellant are members of the same family, family violence has occurred, and family violence will likely occur again in the future. The trial court also finds that appellant has committed family violence and that the protective order is necessary for the "safety and welfare and in the best interest" of the complainant and "necessary for the prevention of family violence." Thus, the trial court, among other things, orders that appellant is prohibited, under chapter 85 of the Texas Family Code, from "[g]oing to or near the residence or place of employment or business of [the complainant], specifically," appellant is prohibited "from coming within 200 feet of [the complainant's] place of residence located in Harris County at 1127 Louise, Houston, Texas 77009, or any future residential or employment address of [the complainant]." (Emphasis omitted.) The protective order states that it "shall continue in effect for a period of two years." It is signed by the trial court and appellant.

The complainant further testified that on July 4, 2003, appellant came to the complainant's home, and the complainant called for emergency assistance. Although appellant left the complainant's home, law enforcement officers eventually located him, and appellant was charged with the offense of violation of

15

a protective order. Appellant was convicted of the offense and "spent some time in the jail." *See Henry*, 509 S.W.3d at 920 (explaining "a defendant may . . . be linked to prior convictions through the testimony of a witness who personally knows the defendant and the fact of his prior conviction and identifies him" and concluding witness's testimony that "he knew [defendant] went to prison for aggravated assault in 1989" was "a solid link between [defendant] and the 1989 aggravated assault" prior conviction (internal quotations omitted)); *see also Flowers*, 220 S.W.3d at 922 (testimonial evidence may suffice to prove prior conviction); *Arrambide v. State*, No. 13-20-00135-CR, 2022 WL 619148, at *4–5 (Tex. App.—Corpus Christi–Edinburg Mar. 3, 2022, pet. ref'd) (mem. op., not designated for publication) (defendant's mother testified that she was aware of his 1995 and 2006 incarcerations and that "he served a ten-year and eight-year sentence respectively"); *Batts v. State*, 673 S.W.2d 666, 668 (Tex. App.—San Antonio 1984, no pet.) (complainant's testimony standing alone is sufficient to support conviction).

The trial court also admitted into evidence a copy of a judgment of conviction rendered in trial court cause number 1181781. The judgment shows that on July 11, 2003, "Jose Juan Navarro" was convicted of the offense of violation of a protective order, and the trial court assessed his punishment at

confinement for eight days. The judgment lists the date of the offense as July 4, 2003.[6]

Avilez, the latent print examiner with the Harris County Sheriff's Office, testified that a copy of a 2003 jail card, which was admitted into evidence, contained appellant's fingerprints. Like the July 11, 2003 judgment of conviction that document lists appellant's name as "Jose Juan Navarro." The jail card also includes a physical description of appellant, states that the complainant is appellant's father, and shows that appellant signed it with the name "Juan Navarro." *See Martin v. State*, No. 14-21-00736-CR, 2023 WL 3115779, at *6 (Tex. App.—Houston [14th Dist.] Apr. 27, 2023, no pet.) (mem. op., not designated for publication) (physical description of named person in record allows fact finder to compare physical appearance of defendant with person described in record). Sergeant Flores testified that appellant "ha[d] an alias of Jose Juan Navarro."

---

[6] Although the July 11, 2003 judgment of conviction does not contain a fingerprint clear enough to compare to the known fingerprint of appellant, this is not dispositive of our analysis. *Cf. Kinnett v. State*, 623 S.W.3d 876, 896–97 (Tex. App.—Houston [1st Dist.] 2020, pet. ref'd) (holding jury could have found beyond reasonable doubt defendant had prior convictions even though judgment of conviction did not contain defendant's fingerprint); *Hall v. State*, No. 06-20-00023-CR, 2020 WL 7268584, at *5 (Tex. App.—Texarkana Dec. 11, 2020, pet. ref'd) (mem. op., not designated for publication) (overruling defendant's argument evidence was "insufficient to establish that he was the person [previously] convicted in cause number CR-16-25700 because the State was not able to match his thumbprint to the judgment").

Regardless of the type of evidentiary puzzle pieces the State offers to prove the existence of a prior conviction and its link to a defendant, it is the fact finder who determines if the pieces fit together sufficiently to complete the puzzle. *See Flowers*, 220 S.W.3d at 923; *see also Henry*, 509 S.W.3d at 919. Notably, the fact finder considers the totality of the admitted evidence to determine whether there was a previous conviction and whether the defendant was the person convicted. *See Flowers*, 220 S.W.3d at 923; *see also Henry*, 509 S.W.3d at 919.

Here, viewing the totality of the evidence admitted in the light most favorable to the verdict, as we must when conducting a sufficiency review, we conclude that a rational jury could have found beyond a reasonable doubt that (1) appellant's prior conviction for the offense of violation of a protective order on July 11, 2003 exists and (2) appellant is linked to that conviction. *See Flowers*, 220 S.W.3d at 921–23; *see also Henry*, 509 S.W.3d at 919 (fact finder "must look at the totality of the evidence adduced" and "must consider the evidence as a whole, as each piece of evidence may provide little meaning if considered in isolation"). Thus, we hold that the evidence is legally sufficient to support appellant's conviction for the offense of violation of a protective order, with two or more prior convictions.

We overrule appellant's sole issue.

## Conclusion

We affirm the judgment of the trial court.

Julie Countiss
Justice

Panel consists of Justices Kelly, Hightower, and Countiss.

Do not publish. TEX. R. APP. P. 47.2(b).